Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the deputy commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as:
STIPULATIONS
1. On 30 October 1992, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on 30 October 1992.
3. On 30 October 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. As a result of her 30 October 1992 injury, plaintiff had carpal tunnel syndrome.
4. At the time of her compensable injury, plaintiff's average weekly wage was $405.93, yielding a compensation rate of $270.63.
5. Plaintiff's medical records from Dr. Kihlstrom, Dr. Peter Jacobi, Dr. George S. Edwards, Jr., Dr. J. Moore, and Dr. S.W. Warburton, received by the undersigned on 20 April 1995, are stipulated into evidence.
6. The undersigned takes judicial notice of defendants' Form 24, Application of Employer or Insurance Carrier to Stop Payment of Compensation, approved by the Industrial Commission on 4 August 1994, and a letter to plaintiff from Chief Claims Examiner Martha A. Barr dated 20 July 1994.
EVIDENTIARY RULINGS
The objection appearing in the deposition of J. Michael Bartlett is OVERRULED.
***********
The Full Commission adopts the findings of fact found by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was fifty years old and had one son. Plaintiff was a high school graduate and had taken courses at Durham Technical Institute. Plaintiff had been employed by defendant-employer for thirteen years during which time she held several different positions. Plaintiff had been a Section 8 technician, a resident service specialist and an outreach worker.
2. On 30 October 1992, plaintiff was employed by defendant-employer as a work order clerk, a position she had held for approximately three years. In this position, plaintiff used a computer keyboard to type data into a computer. Plaintiff used the keyboard for approximately seven hours per day.
3. On 30 October 1992, plaintiff, who was left hand dominant, began experiencing pain and numbness in her left hand, left wrist and right wrist. The pain in plaintiff's hand and wrists resulted from bilateral carpal tunnel syndrome. Plaintiff's carpal tunnel syndrome resulted from her employment with defendant-employer.
4. On 1 December 1992, Dr. Warburton restricted plaintiff from using a computer keyboard, lifting heavy objects with her left hand and lifting above her shoulder. Plaintiff continued working for defendant-employer, with the foregoing restrictions, through 5 February 1993, when her carpal tunnel syndrome rendered her incapable of earning wages with defendant-employer.
5. On 23 September 1993, plaintiff reached maximum medical improvement, with no permanent partial disability as a result of her carpal tunnel syndrome.
6. On 9 December 1993, plaintiff met with, and was interviewed by, Mr. George Lentz, a vocational rehabilitation specialist hired by defendants to assist plaintiff in obtaining employment. Plaintiff was informed that Mr. Lentz would assist her in obtaining employment by providing her with information about available employment, consistent with her restrictions, in the vicinity of her home.
7. Plaintiff was to contact the potential employers identified by Mr. Lentz, as well as potential employers she identified herself, and take appropriate action to pursue employment in those positions. In addition, plaintiff was to keep a weekly log of her attempts to obtain employment, indicating the name of the potential employer, the individual contacted, the source of the employment lead and the result of her effort to obtain employment. Plaintiff was to contact at least ten potential employers each week and submit to Mr. Lentz documentation of those contacts.
8. From 22 March 1994 through 22 June 1994, Mr. Lentz provided plaintiff with the names and locations of twenty-one potential employers. During this period, plaintiff submitted only one weekly log indicating employment sought. Plaintiff attempted to contact only one of the potential employers identified by Mr. Lentz. Plaintiff's physical restrictions did not interfere with or prevent her from contacting the potential employers identified by Mr. Lentz or those she could have identified for herself.
9. On 19 July 1994, defendants filed an Industrial Commission Form 24, Application of Employer or Insurance Carrier to Stop Payment of Compensation, based upon plaintiff's alleged non-compliance with vocational rehabilitation. By letter dated 20 July 1994, the Chief Claims Examiner ordered plaintiff to cooperate with defendants' efforts to provide vocational rehabilitation.
10. From 18 July 1994 through 19 August 1994, plaintiff contacted and sought employment from forty-seven potential employers. During this period, plaintiff attempted to keep in regular contact with Mr. Lentz. After August 1994, plaintiff continued her attempts to obtain employment with the City of Durham and Durham County, visiting their personnel office twice each month. Plaintiff interviewed for a position with Hardee Street Apartments. She also mailed her resume to between eight and ten potential employers.
11. On 4 August 1994, the Industrial Commission approved defendants' Form 24, Application of Employer or Insurance Carrier to Stop Payment of Compensation, based upon plaintiff's alleged non-compliance with defendants' vocational rehabilitation efforts.
12. From 22 March 1994 through 18 July 1994, plaintiff's efforts to obtain employment on her own, and her cooperation with Mr. Lentz in his effort to assist her in obtaining suitable employment, were neither diligent nor consistent. Plaintiff's efforts to obtain employment during this period were unreasonable and her failure to diligently pursue potential employment opportunities was not excused by her medical condition.
13. As a result of her carpal tunnel syndrome, plaintiff was rendered incapable of earning wages with defendant-employer, or in any other employment, from 5 February 1993 through 22 March 1994 and from 19 July 1994 through the date of the hearing in this matter.
14. Plaintiff received temporary total disability compensation from 12 February 1992 through 4 August 1994 at the rate of $270.63 per week.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 30 October 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff was entitled to payment of temporary total disability compensation at the rate of $270.63 per week from 12 February 1993 through 22 March 1994.
3. As a result of her failure to undertake reasonable efforts to obtain employment or to cooperate with defendants' program of vocational rehabilitation, plaintiff was not entitled to disability compensation from 22 March 1994 through 18 July 1994. N.C. Gen. Stat. § 97-25; Russell v. Lowes ProductDistribution, 108 N.C. App. 762 (1993).
4. Plaintiff's refusal to cooperate with defendants' vocational rehabilitation efforts ceased after 18 July 1994 and she is therefore entitled to payment of temporary total disability compensation at the rate of $270.63 per week from 5 August 1994 and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-25; Russell v. Lowes Product Distribution,108 N.C. App. 762 (1993).
5. Defendants are entitled to a credit against the temporary total disability compensation due plaintiff under paragraph 4 in an amount equal to the disability compensation paid to plaintiff from 22 March 1994 through 18 July 1994.
6. Plaintiff is entitled to no permanent partial disability compensation as a result of her occupational disease. N.C. Gen. Stat. § 97-31.
7. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of her carpal tunnel syndrome for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $270.63 per week from 5 August 1994 and continuing until further order of the Industrial Commission. Amounts that have accrued shall be paid in a lump sum, subject to the attorney fee approved in paragraph 4.
2. Defendants shall receive a credit against the compensation due under paragraph 1 of this award equal to the compensation paid to plaintiff from 22 March 1994 through 18 July 1994.
3. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of plaintiff's carpal tunnel syndrome for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will lessen plaintiff's period of disability.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the accrued portion of this award shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
ORDER
Defendant's post-hearing Motions which were essentially Motions to Set Aside the Form 21 Agreement on the grounds of mutual mistake of fact raise matters that should be determined after an evidentiary hearing before a deputy commissioner.
IT IS THEREFORE ORDERED that this matter shall be Remanded to Deputy Commissioner Hedrick for a hearing on said Motion.
IT IS FURTHER ORDERED that defendants shall pay compensation to plaintiff pursuant to the Award above until further Order of the Industrial Commission.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
S/ _________________ DIANNE C. SELLERS COMMISSIONER